**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RESIDENTS ENERGY, LLC and IDT ENERGY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> KWAME RAOUL, in his individual capacity and in his official capacity as the Attorney General of the State of Illinois, <br><br> Defendant. | Case No. _____ <br><br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiffs, Residents Energy, LLC ("Residents") and IDT Energy, Inc. ("IDT"), bring this Complaint against Defendant Kwame Raoul, individually and in his official capacity as Attorney General of the State of Illinois, and allege as follows:

**INTRODUCTION**

1.     Defendant, Illinois Attorney General Kwame Raoul, has established an illegal, sprawling law-enforcement-for-profit scheme that violates the neutrality doctrine and basic guarantees of fair process.

2.     Attorney General Raoul has appointed three private plaintiff law firms as Special Assistant Attorneys General (SPAAGs) to prosecute penal enforcement actions against alternative retail electric suppliers (ARES). Attorney General Raoul and the SPAAGs have entered a broad contingency-fee arrangement in which the government pays these private firms a percentage of the money they recover from any ARES through enforcement litigation or the threat of litigation.

3.     In other words, Attorney General Raoul has unleashed these three private firms (Miner, Barnhill, & Galland, P.C.; Hughes Socol Piers Resnick & Dym, Ltd.; and Edelson PC)

on a contingency-fee-incentivized quest to investigate and prosecute an entire industry, with the goal of profiting from enormous fines extracted through threats of revoking the licenses that the ARES depend on to do business.

4.     In a pending state-court proceeding, those private law firm SPAAGs, acting under color of the Attorney General, seek to revoke Residents' license to operate in Illinois and impose millions of dollars in statutory penalties against Residents, with the goal of extracting a lucrative contingency-fee payday for themselves. *See People of the State of Illinois, ex rel. Kwame Raoul v. Residents Energy, LLC*, No. 23 CH 8494 (the "Residents Action").

5.     In that case, the SPAAGs have repeatedly cloaked themselves with the power of the state, demanding rights no private litigant ever could, all while enforcing penal statutes for private profit.

6.     These same SPAAGs also recently sent a letter to IDT, Residents' affiliate and former parent, purporting to notify IDT that the Office of the Illinois Attorney General had determined that IDT supposedly violated provisions of a 2019 Consent Decree. The SPAAGs threatened that unless IDT immediately undertook a host of onerous and costly actions, including ceasing all marketing activities, they would institute contempt proceedings.

7.     That letter reflects that the SPAAGs are engaged in general enforcement activities, a troubling prospect given that the SPAAGs' compensation for this work depends on their extraction of additional money from IDT. Given these SPAAGs' incentives, their ostensible enforcement letter is plainly a set-up to demand financial penalties.

8.     The SPAAGs have also targeted other ARES in Illinois, extracting pre-litigation settlements or commencing enforcement actions seeking fines and threatening license

revocations. The SPAAGs have initiated at least seven proceedings against ARES in Illinois to date.

9. The troubling financial incentives at play in this scheme are not confined to the SPAAGs. Attorney General Raoul himself has repeatedly acknowledged that his office relies *heavily* on fines, penalties, and settlements to fund its operations.[1]

10. On information and belief, over 30% of the Attorney General's budget is derived from funds composed of settlements and judgments collected by the Attorney General.

11. Attorney General Raoul also boasted that in Fiscal Year 2023 (the same year the SPAAGs sued Residents), for every dollar appropriated to his office, it generated $17.55 for the state.[2] And the SPAAGs cost the state nothing, which undoubtedly will inflate the Attorney General's Office's touted "rate of return." Attorney General Raoul has also acknowledged that his office's resources are being stretched thin by lawsuits against the Trump administration, noting that such politically motivated litigation requires substantial staffing and additional funding commitments.[3]

12. These admissions reinforce that the Attorney General has an institutional and political interest in maximizing enforcement revenue—a profit motive that aligns with and exacerbates the bias created by his illegal contingency-fee arrangement with the deputized private-law-firm SPAAGs.

---

[1] Ex. 1, Peter Hancock, *Citing Growing List of Duties, Illinois' Raoul Seeks a $15M Increase in AG Budget*, CAPITOL NEWS ILLINOIS, Apr. 21, 2025.

[2] Ex. 2, Attorney General Press Release, *Attorney General Raoul's Office Collects More Than $1 Billion in State Revenue in 2023*, Apr. 3, 2024.

[3] Ex. 3, Peter Hancock, *Lawsuits with Trump Administration Stretching Illinois Attorney General's Resources*, CAPITOL NEWS ILLINOIS, Feb. 11, 2025.

13. Attorney General Raoul's use of private contingency-fee plaintiff firms to pursue the official state enforcement work of the Attorney General's Office violates Plaintiffs' due process rights under the United States Constitution and violates several provisions of the Illinois Constitution.

14. Plaintiffs therefore bring this action to stop Attorney General Raoul's constitutional violations and prevent him from using contingency-fee plaintiff firms such as the SPAAGs to wield the coercive power of the state for profit in penal law-enforcement actions against them.

## PARTIES

15. Plaintiff Residents Energy, LLC is a New York limited liability company with its principal place of business in New Jersey. Residents is certified as an Alternative Retail Electric Supplier (ARES) in Illinois by the Illinois Commerce Commission (ICC). Residents also operates in other states.

16. Plaintiff IDT Energy, Inc. is a New Jersey limited liability company with its principal place of business in New Jersey. IDT is certified as an Alternative Retail Electric Supplier (ARES) in Illinois by the Illinois Commerce Commission (ICC). IDT is the former parent and a current affiliate of Residents. IDT also operates in other states.

17. Defendant Kwame Raoul is the Attorney General of the State of Illinois. He is a resident of Illinois and is being sued in in this action in both his individual and official capacities.

## JURISDICTION AND VENUE

18. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

19. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

4

20.     Venue is proper in this district under 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

**A.  The Alternative Retail Electric Supply (ARES) industry provides
consumers with a broader range of electricity supply options.**

21.     Illinois deregulated its electric and gas industries in 1997 when the Legislature
passed the Illinois Electric Service Customer Choice and Rate Relief Law of 1997. The
deregulation of those industries introduced competition into the marketplace for the supply of
electricity and natural gas to retail customers.

22.     Alternative retail electric supplies (ARES) such as IDT and Residents supply
electricity to consumers. Regardless of the *supplier*, electricity is always *delivered* to the
consumer by the local utility. Although the commodity that all ARES sell is the same as that of
the local utility (electricity), ARES give consumers options, including programs designed to
leverage market forces to lower costs or to eliminate the risk of price fluctuations during the
terms of fixed-rate contracts. ARES thus operate subject to competitive market forces rather than
monopoly regulation and can offer consumers a range of market-driven choices in suppliers and
energy programs.

23.     ARES primarily market their electricity programs using independent, third-party
contract salespeople through both telemarketing and in-person sales. ARES typically provide
marketing scripts that are carefully composed to comply with the laws in each jurisdiction in
which they operate and train the contract salespeople about what they must and must not say
when soliciting a sale.

24.     The vast majority of the allegations in the Residents Action (and, on information
and belief, in all the actions against ARES) involve alleged acts or omissions by individual third-

party marketing contractors, who purportedly said something they should not have, or failed to say something they should have, when soliciting a sale.

**B. The Attorney General retains contingency-fee plaintiff firms to prosecute the entire ARES industry.**

25.     In April 2023, the Attorney General and Residents settled a subpoena enforcement dispute. Residents had resisted the subpoena because it believed that a 2019 Consent Decree the Attorney General entered into with IDT also released Residents, IDT's then-affiliate and former subsidiary, from claims during most of the period covered by the subpoena. To resolve the dispute, Residents agreed to make a limited production to the Attorney General in the belief that the production would end the matter for good.

26.     But by the time the settlement was finalized, Attorney General Raoul had struck a deal with the three contingency-fee plaintiff firms to deputize them as SPAAGs to pursue claims against targets in the ARES industry.[4] According to their contracts with the Attorney General (which the SPAAGs recently attached to their opposition to a motion to dismiss an enforcement action against a different ARES in a separate state enforcement proceeding), the SPAAGs' compensation is "contingent upon recovery and collection of damages or monetary penalties."[5]

27.     The agreement provides that except for court-awarded fees, the SPAAGs are entitled to no compensation other than a percentage of monetary recoveries from the ARES they sue or threaten to sue.[6]

28.     The SPAAGs are not employees of the State of Illinois and are not on the Attorney General's payroll.

---

[4]  Ex. 4, Schedule 1, Section 1.2.

[5]  *Id*., Schedule 2, Section 2.1.

[6]  *Id*.

29.     On information and belief, the SPAAGs were retained without legislative appropriation.

### C. The SPAAGs file a penal enforcement action against Residents and exercise the coercive power of the state.

30.     In September 2023, the SPAAGs filed the Residents Action on behalf of the Attorney General, seeking civil penalties under the Illinois Consumer Fraud and Deceptive Business Practices Act and the Telephone Solicitations Act.[7]

31.     Among other things, the Residents Action seeks extensive penal relief: the revocation of Residents' ICC license to do business in Illinois, statutory fines up to $50,000 per violation, and civil penalties for violations involving elderly or disabled consumers.

32.     As the parties engaged in preliminary motion practice and discovery negotiations, the SPAAGs increasingly flexed the coercive power of the Attorney General's Office.

33.     For example, over Residents' objection, the SPAAGs moved for entry of a confidentiality order that departs sharply from the norms of civil litigation and instead reflects a penal and investigatory posture typical of a criminal prosecution or inter-agency law enforcement operation.

34.     Specifically, the SPAAGs moved for inclusion of a provision that would give them the unfettered right to share Residents' confidential discovery material with "other state Attorneys General" and "other law enforcement agencies" for undefined "legitimate law enforcement purposes."[8]

35.     The SPAAGs justified this broad power by arguing that the Attorney General is not a private civil litigant but a "law enforcement officer" obligated to "follow the facts where

---

[7] Ex. 5.

[8] Ex. 6 at 3.

7

they lead" and to facilitate multi-jurisdictional enforcement coordination. Cloaking themselves in the mantle of state agents, the SPAAGs argued:

> The Attorney General, as the chief law enforcement officer of Illinois, must be able to share materials with other law enforcement bodies when he has relevant knowledge of information requested by those bodies.[9]

36.     This self-characterization demonstrates that the Attorney General and the SPAAGs are wielding state enforcement power to initiate and coordinate penal actions across jurisdictions—actions by which the SPAAGs themselves stand to profit financially, if they can cajole other state attorneys general into pursuing copycat prosecutions in other jurisdictions.

37.     The SPAAGs drew an analogy between their desired confidentiality provisions and the statutory powers of the Federal Trade Commission (FTC), which conducts criminal and quasi-criminal investigations and coordinates prosecutions across state lines:

> Plaintiff's proposed Confidentiality Order simply creates symmetry with the information-sharing that would already be permitted in a federal FTC investigation.[10]

38.     The SPAAGs' express analogy to FTC criminal investigations confirms that the Attorney General has engaged the SPAAGs as part of a broader law-enforcement campaign. The SPAAGs asserted that the ability to disseminate Residents' confidential discovery material was "central" to the Attorney General's "law enforcement mission and maintaining its collaborative relationship with sister States and agencies."[11]

---

[9] *Id*. at 3, 5.

[10] *Id*. at 6.

[11] *Id*.

39.     The SPAAGs argued on reply that "the Attorney General has a long history of sharing law enforcement information with relevant law enforcement partners for law enforcement purposes."[12] But contingency-fee plaintiff firms are *not* "law enforcement partners."

40.     The threat of sharing confidential information with "other" enforcement agencies is designed to further increase the stakes defendants face if they litigate the claims and further pad the pockets of the private law firms wielding state enforcement powers.

41.     The SPAAGs have sought to wield the power of the Attorney General in other ways as well. For example, on June 24, 2025, the SPAAGs wrote a letter stating that they had obtained unsigned copies of settlement agreements that Residents sent to consumers who had filed complaints with the Illinois Commerce Commission. These private agreements include confidentiality, non-cooperation, and non-disparagement provisions. The SPAAGs asserted that Residents' bargained-for settlements would be unenforceable against them because they "interfere with the State's interest in enforcing its own laws and restrict citizen cooperation with law enforcement."[13]

42.     There can be no doubt that the Attorney General has treated the SPAAGs—and the SPAAGs are purporting to act—as part of Illinois' law-enforcement apparatus.

**D.  The SPAAGs threaten IDT with new enforcement proceedings.**

43.     On June 16, 2025, the SPAAGs wrote counsel for Residents and IDT in the Residents Action, purporting to "notify" IDT of the "determination of the Office of the Illinois Attorney General" that IDT had allegedly violated provisions of its 2019 Consent Decree.[14]

---

[12] Ex. 7 at 7.
[13] Ex. 8 at 2.
[14] Ex. 9 at 1.

44.     In a 14-page letter, the SPAAGs alleged a host of violations by IDT's contract salespeople and directed IDT, within 30 days, to provide a detailed written response, produce a host of documents and records, and cease all marketing activities in Illinois. The SPAAGs threatened to initiate contempt proceedings if IDT did not comply.[15]

45.     On information and belief, and given the fee structure under which the SPAAGs operate, the SPAAGs will only be paid for this work if they extract money from IDT through a judgment or settlement or obtain an award of attorney fees—after IDT already made a significant payment pursuant to the 2019 Consent Decree that included a broad release.

46.     The SPAAGs' letter thus presages that the SPAAGs, under color of the Attorney General, intend to initiate a second contingency-fee action against IDT, regardless of IDT's response.

### CLAIMS FOR RELIEF

### COUNT I
### 42 U.S.C. § 1983 – Violation of Due Process – Fourteenth Amendment
### (Against Defendant in His Individual and Official Capacities)

47.     Plaintiffs incorporate the foregoing allegations.

48.     Under the Fourteenth Amendment, a state cannot pursue a criminal, quasi-criminal, or punitive action against a private citizen using a state actor who lacks sufficient impartiality and neutrality.

49.     The Fourteenth Amendment's Due Process Clause thus prohibits the government from delegating prosecutorial authority in penal enforcement proceedings to private parties with a direct financial interest in the outcome.

---

[15] *Id.* at 13.

50.     Defendant Kwame Raoul, in his individual capacity, personally authorized, oversaw, and ratified the retention of private law firms under financial arrangements that created an unconstitutional risk of prosecutorial bias.

51.     Defendant Kwame Raoul, in his official capacity as Attorney General of Illinois, has implemented and continues to enforce a civil prosecution scheme under which his office retains outside private law firms on contingency to investigate and prosecute penal enforcement actions against ARES.

52.     Defendant's use of contingency-fee SPAAGs to prosecute a penal enforcement action against Residents that they describe as a "law enforcement action," and which seeks to revoke Residents' business license and impose significant penal fines, has deprived and threatens to continue to deprive Residents of its due process rights under the Fourteenth Amendment, and has rendered the action and any continued proceedings in the action fundamentally unfair.

53.     Defendant's use of contingency-fee SPAAGs to issue to IDT a notice of violation of the Consent Decree, order IDT to cease all marketing activities, and direct IDT to comply with a host of onerous requirements under threat of contempt proceedings, has deprived and threatens to continue to deprive IDT of its due process rights under the Fourteenth Amendment, and has rendered the notice and any potential proceedings based upon it fundamentally unfair.

54.     Defendant's actions have caused and continue to cause Plaintiffs financial, reputational, and other harm.

## COUNT II
### Violations of Illinois Constitution –
### Due Process, Separation of Powers, and Appropriations
### (Against Defendant in His Individual and Official Capacities)

55.     Plaintiff incorporates the foregoing allegations.

56.     Article I, Section 2 of the Illinois Constitution provides that no person shall be deprived of life, liberty, or property without due process of law. Illinois courts interpret this clause consistently with, or more broadly than, the Fourteenth Amendment of the U.S. Constitution, and it applies with full force to governmental conduct that infringes upon the rights of regulated businesses.

57.     Article II, Section 1 of the Illinois Constitution embodies the doctrine of separation of powers and provides that no branch shall exercise powers properly belonging to another. The power to appropriate funds and to define the means by which state officials discharge their duties lies with the General Assembly, not the Executive Branch.

58.     Article V, Section 15 designates the Attorney General as the legal officer of the State and limits his authority to powers that may be prescribed by law.

59.     Article V, Section 21 restricts the Attorney General and other executive officers to compensation fixed by statute, stating that they shall "receive no other compensation for their services." This bar extends to compensation of the Attorney General's deputies and assistants. The Attorney General cannot appoint Special Assistant Attorneys General, declare that they do not work for the State, and thereby circumvent Article V, Section 21's limitation on compensation.

60.     Article VIII, Section 2(b) mandates that public funds may only be spent pursuant to appropriations made by law. By engaging private firms on a contingency-fee basis to pursue statutory penalties and other monetary relief from which the firms will be paid, the Attorney

12

General has circumvented this constitutional safeguard and effectively appropriated enforcement revenues without legislative authorization.

61.     These constitutional provisions, individually and collectively, prohibit the Attorney General from assigning inherently governmental enforcement powers to private, profit-seeking entities outside of established budgetary processes and compensation frameworks. The challenged arrangement not only bypasses the legislature's authority over appropriations and compensation but also deprives regulated entities such as Residents and IDT of due process and impartial enforcement proceedings as guaranteed by the Illinois Constitution.

62.     Defendant Kwame Raoul, in his individual capacity, personally authorized, oversaw, and ratified the retention of private law firms under financial arrangements that created an unconstitutional risk of prosecutorial bias.

63.     Defendant Kwame Raoul, in his official capacity as Attorney General of Illinois, has implemented and continues to enforce a civil prosecution scheme under which his office retains outside private law firms on contingency to investigate and prosecute penal enforcement actions against ARES.

64.     Defendant's actions have caused and continue to cause Plaintiffs financial, reputational, and other harm.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendant and:

(a) declare Defendant's use of private contingency-fee lawyers in his pursuit of claims against Residents and threatened proceedings against IDT to be unconstitutional and in violation of the Fourteenth Amendment's due process clause;

(b) declare Defendant's use of private contingency-fee lawyers in his pursuit of claims against Residents and threatened proceedings against IDT to be unconstitutional in violation of the Illinois Constitution;

(c) enjoin Defendant from continuing to prosecute or directing the prosecution of Residents or IDT through private law firms acting under contingency fee arrangements;

(d) enjoin Defendant from pursuing claims against Residents in the Circuit Court of Cook County, Illinois, which Defendant is pursuing in violation of the Illinois Constitution and Residents' constitutional and due process rights;

(e) enjoin Defendant from pursuing or threatening to pursue claims against IDT, which Defendant is threatening in violation of the Illinois Constitution and IDT's constitutional and due process rights;

(e) award Plaintiffs compensatory and punitive damages, including their attorney fees and costs incurred in defending against the unconstitutional Residents Action, as described herein;

(f) award Plaintiffs compensatory and punitive damages, including their attorney fees and costs incurred in defending against the unconstitutional pursuit of further claims against IDT, as described herein;

(g) award Plaintiffs their costs and attorney fees incurred in connection with this action; and

(h) grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury.

Dated: August 20, 2025

By:   */s/ Bennett W. Lasko*
     Bennett W. Lasko
     LASKO LEGAL SERVICES, LTD.
     2 North Riverside Plaza, #1850
     Chicago, IL 60606
     (312) 763-6290
     blasko@laskolegal.com
     Attny No. 60361

     Jason Cyrulnik (*pro hac vice* to be filed)
     Michael M. Pomerantz (*pro hac vice* to be filed)
     CYRULNIK FATTARUSO LLP
     55 Broadway, Third Floor
     New York, NY 10006
     (646) 844-2466
     jcyrulnik@cf-llp.com
     mpomerantz@cf-llp.com

     *Counsel for Plaintiffs*